3 P.3d 56

Scott SCHAEFER and Marla Schaefer, husband and wife, Plaintiffs–Appellants–Cross Respondents,

v.

Kelly L. READY and Tana Ready, husband and wife, Defendants–Respondents–Cross Appellants,

and

John T. Croslin and Edna Croslin, dba Seven Mile Lounge, Defendants.

No. 25257.

Court of Appeals of Idaho.

March 2, 2000.

Review Denied June 27, 2000.

Law Offices of Comstock & Bush, Boise, for appellant.   David E. Comstock argued.

Marcus, Merrick & Montgomery, LLP, Boise, for respondent. Wilbur T. Nelson argued.

SCHWARTZMAN, Judge.

Scott and Marla Schaefer (the Schaefers) appeal from the district court's denial of their motion for new trial or, in the alternative, an additur. The Schaefers assert that the compensatory and punitive damages awarded by the jury were inadequate such that a new trial or an additur was warranted. The Schaefers also assert that errors in law occurred at trial, thus making a new trial necessary.

## I.

### FACTS AND PROCEDURE

On December 3, 1993, Kelly Ready was driving home from an office Christmas party sponsored by Idaho Power Company and held at the Seven Mile Lounge. Ready was intoxicated to the point that he did not even recall leaving the party. While driving home, Ready struck the Schaefers' car with his truck at a high rate of speed. The Schaefers were stopped at a stoplight at the intersection of Eagle Road and Fairview Avenue in Boise and were returning to their home. Ready did not stop at the accident scene and continued to his house, where he was later arrested. In addition to their car being severely damaged, the Schaefers sustained physical injuries that required medical treatment. Marla Schaefer was taken by ambulance to a local hospital emergency room, where she was treated and later released.

The Schaefers filed a complaint against Ready and his wife (the Readys), Idaho Power Company, and John and Edna Croslin, as owners of the Seven Mile Lounge. The claims against Idaho Power Company were eventually dismissed with prejudice pursuant to stipulation. The Schaefers later amended their complaint to include a claim for punitive damages. A separate trial was ordered as to the punitive damages issues pursuant to I.R.C.P. 42(b), to take place before the same

jury immediately after the compensatory damages trial.

The Readys offered approximately $35,000 as a settlement to the Schaefers and subsequently made another joint offer of $75,000 on April 29, 1998. Before the trial began, the Readys filed a motion to exclude evidence of the fact that their insurance policy provided coverage for punitive damages. The Schaefers objected to this proposed exclusion, arguing that the evidence would be relevant if the Readys put on evidence of their inability to satisfy a punitive damages award. The district judge granted the Readys' motion to exclude evidence of their insurance coverage, despite the fact that the Readys would be allowed to present evidence of their financial inability to respond to a punitive damages award.

The compensatory damages trial began on June 30, 1998, and the jury returned its verdict eight days later. The punitive damages trial lasted one day with the same jury returning a verdict later that day. The total money damages awarded to the Schaefers was approximately $55,000. Only $5,100 of the total damages represented the punitive award.

Judgment was entered on both verdicts and the Schaefers filed a motion for new trial or, in the alternative, an additur pursuant to I.R.C.P. 59(a)(1), (5), and (7). The Readys filed a motion to disallow costs to the Schaefers incurred after April 29, 1998, pursuant to I.R.C.P. 68(b). On December 1, 1998, the district court issued a memorandum decision denying each of the Schaefers' claims for a new trial or additur. Subsequently, the district court issued a memorandum decision denying the Readys' motion to disallow costs, finding that I.R.C.P. 68 was inapplicable to the April 29 *joint* offer of settlement because the Schaefers were awarded *separate* damages.

The Schaefers appeal from the district court's denial of their motion for new trial or, in the alternative, an additur based upon I.R.C.P. 59(a)(5) and I.R.C.P. 59(a)(7). The Readys cross-appeal from the district court's denial of their I.R.C.P. 68 motion.[1]

---

1. The result of our decision today makes it unnecessary and/or premature to address the

Readys' cross-appeal from the district court's

## II.

### AS TO THE COMPENSATORY DAMAGES AWARD, THE DISTRICT COURT FAILED TO RULE ON THE MOTION FOR NEW TRIAL

#### A. I.R.C.P. 59(a)(5) Motions

When the trial court finds that the amount of damages awarded appears to have been given under the influence of prejudice or passion, a new trial or additur is the proper course of action under I.R.C.P. 59(a)(5). *Sanchez v. Galey*, 112 Idaho 609, 615, 733 P.2d 1234, 1240 (1986). The trial court is to refrain from substituting its view for that of the jury, but is instructed to examine the disparity between its own judgment and that of the jury and determine if it shocks the conscience of the court. *Id.* This is a subjective analysis based on the trial court's evaluation of the inadequacy or excessiveness of the jury's award. *Pratton v. Gage*, 122 Idaho 848, 852, 840 P.2d 392, 396 (1992). Therefore, the necessary degree of disparity differs with the facts of each case and with the trial court's sense of fairness and justice. *Collins v. Jones*, 131 Idaho 556, 558, 961 P.2d 647, 649 (1998). If in the trial judge's determination, his or her own award is so substantially different from that given by the jury such that the difference can only be explained by actions based on passion or prejudice, then a new trial or additur should be granted. *Id.*

When granting or denying a motion for a new trial, the trial court must state its reasons unless the reasons are obvious from the record. *Id.* A conclusory statement by the court, unsupported by the identification of any factual basis, is not adequate to illustrate its reasons for granting or denying a new trial. *Pratton*, 122 Idaho at 853, 840 P.2d at 397. The issue of whether the trial court properly granted or denied a motion for new trial or an additur is reviewed under an abuse of discretion standard. *Collins*, 131 Idaho at 558, 961 P.2d at 649. We apply the three-part abuse of discretion test set forth in *Sun Valley Shopping Center Inc. v. Idaho Power Co.*, 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991).

denial of their I.R.C.P. 68 motion to disallow

#### B. Analysis

■ The Schaefers' I.R.C.P. 59(a)(5) motion was based on both the compensatory damages and the punitive damages individually. As to punitive damages, the district court determined that the jury's award was not so disparate to its own evaluation such that prejudice or passion must have been instrumental in the jury's verdict. The district court stated that its conscience was not shocked by the amount of punitive damages awarded. However, the court's decision simply overlooked and failed to address the motion as it related to the compensatory phase of the trial. Unfortunately, neither party brought this deficiency to the attention of the trial judge.

Accordingly, because the district court did not rule on the Schaefers' I.R.C.P. 59(a)(5) motion for new trial as to compensatory damages, that issue must be remanded for further proceedings. The district court should apply the standard as set forth above to the jury's compensatory damages award and rule upon the Schaefers' motion for new trial or additur pursuant to I.R.C.P. 59(a)(5).

## III.

### A NEW TRIAL MUST BE GRANTED ON THE ISSUE OF THE AMOUNT OF PUNITIVE DAMAGES

■ Idaho Rule of Civil Procedure 59(a)(7) provides that the trial court may grant a new trial for "error in law, occurring at trial." The trial court has a duty to grant a new trial under I.R.C.P. 59(a)(7) where prejudicial errors of law have occurred, even though the verdict is supported by substantial and competent evidence. *Davis v. Sun Valley*, 130 Idaho 400, 405, 941 P.2d 1301, 1306 (1997); *Sherwood v. Carter*, 119 Idaho 246, 261, 805 P.2d 452, 467 (1991).

#### A. It Was Error To Admit Evidence Of The Readys' Inability To Satisfy A Punitive Damages Award, When In Fact They Had Punitive Damages Insurance

■ This issue concerns two independent, but interconnected, evidentiary rulings by

costs.

the district court. First, the court ruled that evidence of the Readys' insurance coverage for punitive damages awards was not admissible because "the probative value was substantially outweighed by its potential prejudicial impact." Specifically, the court felt that the "mention of insurance invites higher awards than are justified by the facts." This ruling is in accord with I.R.E. 411 and is not disputed by the Schaefers. Second, the court allowed, over objection, Kelly Ready to testify about his current financial situation, including outstanding debts. The Readys presented such evidence in order to cast doubt upon their ability to satisfy a punitive damages award. Kelly Ready wanted, in effect, to inform the jury that it would not take much of a financial award to deter him from similar conduct because he had limited financial resources.

When viewed *separately*, these evidentiary rulings are certainly supportable. Evidence of insurance coverage is always treated with great caution and is routinely excluded. I.R.E. 411. On the other hand, evidence of a defendant's wealth may be admitted for determining the amount of punitive damages necessary to deter and punish a defendant. *Cheney v. Palos Verdes Inv. Corp.*, 104 Idaho 897, 902, 665 P.2d 661, 666 (1983); *Cox v. Stolworthy*, 94 Idaho 683, 690, 496 P.2d 682, 689 (1972). However, when these two evidentiary rulings are taken together, the potential for prejudice and misleading of the jury becomes apparent. *See, e.g., Mathie v. Fries*, 121 F.3d 808, 816 (2nd Cir.1997) (holding, as to punitive damages, that "it would be entirely inappropriate for a defendant to raise the issue of his limited financial resources if there existed an indemnity agreement placing the burden of paying the award on someone else's shoulders"); *Kemezy v. Peters*, 79 F.3d 33, 36–37 (7th Cir.1996) (holding that evidence of a defendant's wealth is inadmissible when the defendant has insurance for punitive awards; additionally stating that "it is bad enough that insurance or indemnification reduces the financial incentive to avoid wrongdoing.... It would be worse if the cost of insurance fell, reducing the financial disincentive to engage in wrongful behavior, because the insurance company knew that its insured could plead poverty to

the jury"); *DeMatteo v. Simon*, 112 N.M. 112, 812 P.2d 361, 364 (1991) (holding that the trial court did not err in excluding evidence of impecunity because it would be unfairly prejudicial and mislead the jury where the defendant had insurance coverage for punitive damages); *Hall v. Wal–Mart Stores, Inc.*, 959 P.2d 109, 113 n. 7 (Utah 1998) (holding that a negligent defendant should not be permitted to plead poverty, for purposes of determining his relative wealth and financial abilities, if he has an insurance policy which covers the award of punitive damages).

If a defendant has indemnity to satisfy a punitive damages award, then he or she should not be permitted to present evidence that paints an unrealistically bleak financial picture for the jury. Such conduct misleads the jury and could unfairly prejudice the verdict. Accordingly, we hold that the district court committed an error of law when it allowed Kelly Ready to testify about his constrained economic situation, even though he had applicable insurance coverage.

**B. It Was Error To Give The Readys' Proposed Jury Instructions Regarding Punitive Damages**

Appellate courts exercise free review over the question of whether a jury has been properly instructed. We must review the jury instructions given and ascertain whether, when considered as a whole, they fairly and adequately present the issues of the case and state the applicable law. *DeGraff v. Wight*, 130 Idaho 577, 579, 944 P.2d 712, 714 (1997); *Brooks v. Gigray Ranches, Inc.*, 128 Idaho 72, 76, 910 P.2d 744, 748 (1996).

Whenever the latest edition of the Idaho Jury Instructions (IDJI) contains an instruction applicable to the case and the court determines that the jury should be instructed on the issue, it is recommended that the judge use the IDJI instruction unless the judge finds that a different instruction would more adequately, accurately or clearly state the law. I.R.C.P. 51(a)(2). Use of the IDJI is not mandatory, only recommended. *Needs v. Hebener*, 118 Idaho 438, 442, 797 P.2d 146, 150 (Ct.App.1990). How-

ever, any court that chooses to vary from a jury instruction previously approved by the Idaho Supreme Court, does so with the risk that the verdict rendered may be overturned on appeal. *See State v. Merwin*, 131 Idaho 642, 647, 962 P.2d 1026, 1031 (1998). While it clearly is not error to modify an IDJI instruction, such modification will constitute error if the modified instruction does not conform to the state of the law or omits elements basic to the case. *Ramco v. H–K Contractors, Inc.*, 118 Idaho 108, 111, 794 P.2d 1381, 1384 (1990).

Our focus in the instant case is on the punitive damages instructions given by the district court. The only IDJI concerning punitive damages is IDJI 921–1, which provides:

> If you find that the defendant's act(s) which proximately caused injury to the plaintiff (was) (were) an extreme deviation from reasonable conduct and that (this) (these) act(s)(was) (were) performed by the defendant with [malice] [fraud] [oppression] [wantonness] [gross negligence], you may, in addition to any compensatory damages to which you find the plaintiff entitled, award to the plaintiff an amount which will *punish* the defendant *and deter* the defendant and others from engaging in similar conduct in the future.
>
> (You have been permitted to hear evidence pertaining to defendant's wealth and financial condition. This evidence was admitted for your consideration only with reference to the question of exemplary or punitive damages in light of all other evidence before you if you determine that such an award should be made in this case.)

IDJI 921–1 (1982) (emphasis added). This instruction was not given. Instead, the district court opted to give several of the Readys' proposed jury instructions, which appear to be an amalgam of quotations lifted from various appellate court decisions. This was an error in law for the following reasons.

■ Instruction number 41 instructed the jury that punitive damages were meant to deter Kelly Ready and others from engaging in similar conduct. Instruction number 43 stated that punitive damages have the "primary objective of deterrence." However, these two instructions failed to instruct the jury that punitive damages are also intended to take account of a defendant's egregious actions and punish him or her accordingly. Moreover, instruction number 44 specifically contradicted IDJI 921–1 and stated "the policy behind punitive damages is deterrence rather than punishment." This is simply a misstatement of Idaho law and punitive damages law in general.[2]

We therefore hold that the court committed an error in law by choosing to use the Readys' proposed jury instructions, rather than IDJI 921–1. The jury instructions given at trial were erroneous and prejudicial for the reasons stated above.

### IV.

### CONCLUSION

Accordingly, we remand the Schaefers' I.R.C.P. 59(a)(5) motion for new trial so that the district court may address the motion as it relates to the compensatory damages awarded. We furthermore grant a new trial pursuant to I.R.C.P. 59(a)(7), consistent with our opinion today, in order to determine the amount of punitive damages warranted by the facts of this case.[3] Costs on appeal as a matter of right are awarded to the Schaefers.

Judge Pro Tem SWANSTROM concurs.

Chief Judge PERRY concurs in part II and part III B and dissents without opinion in part III A.

---

**2.** I.C. § 6–1601(9) describes "punitive damages" as serving "the public policies of punishing a defendant for outrageous conduct and ... deterring future like conduct."

**3.** At oral argument before this Court, counsel for the Readys conceded that if a new trial was granted, it would not be necessary to retry the issue of whether punitive damages should be awarded in the first place. Therefore, on remand, the only issue to be addressed concerning punitive damages is the *amount* thereof.